■ In the Matter of the Estate of OLGA B. NIELSEN, Deceased. ARTHUR O. BERGENN et al., Appellants; ALBERT BOYER et al., Respondents.— Two orders of the Surrogate's Court, Nassau County, dated June 22, 1971 and July 19, 1971, respectively, affirmed, with one bill of costs jointly to respondents appearing separately, payable out of the estate. No opinion. Rabin, P. J., Hopkins, Christ and Brennan, JJ., concur; Benjamin, J., dissents and votes (a) to reverse the order of June 22, 1971 and grant the motion to vacate the probate decree of March 18, 1968 to the extent of directing a plenary hearing on the issues raised by said motion and (b) to reverse the order of July 19, 1971 and reinstate the objections to the executors' final accounting, with the following memorandum: The testatrix died on February 10, 1968, leaving an estate of the value of more than $1,000,000. She was then about 85 years old and had been almost completely paralyzed for some years prior to her death, following a stroke in 1962. Beginning in 1955, the testatrix executed a series of complex wills and codicils (in 1955, 1962, 1964 and 1966), in each of which she gave her husband only his minimum elective share in the form of $2,500 cash plus a life estate in an amount equal to his intestate share of her estate. In each of these wills and codicils she also gave small specific bequests to various collateral relatives and a Norwegian union, with the residue going to her adopted son and another group of collateral relatives; and in none of these wills did the adopted son get more than 30% of the residue, with his share being only 25% thereof in the latest of them. An attorney who had represented the testatrix, on and off since 1955 and who had drafted her 1955 will, averred that she consulted him several times in the spring of 1967 about an updating of her will because of the death of a sister and changes in the residences of certain beneficiaries; that throughout his extensive conferences with her about the updating of her will she clearly indicated that she wanted her new will to be substantially the same as the last previous one, with her husband getting only the same life estate and her adopted son getting no more than she had given him in the last previous will; and that he never completed the proposed new will for her, because she became annoyed with him about an interim bill he had sent her, and had for that reason terminated their relationship. Only three months after the just-described conferences about an updating of her will, and after 12 years of consistent intent as to the distribution of her estate (evidenced by a series of four executed wills and codicils), the testatrix executed a new will on July 1, 1967, which had been drafted by a new attorney who had never previously drafted a will or codicil for her, and which suddenly and without explanation (at least in this record) abandoned her long-standing scheme of distribution and instead simply directed that her estate be distributed as if she had died intestate. As a result of this rather odd new will, the testatrix' husband (now in his late 80's and ill) and her adopted son stand to inherit all of this substantial estate outright, in equal shares, despite the testatrix' oft-expressed intention to give her husband only a life interest in his intestate share and her adopted son only about 25% of the residuary estate; and the other beneficiaries named in the series of wills and codicils executed between 1955 and 1967 will now get nothing. In addition to the foregoing, the record indicates (a) that the bulk of this estate had been earned and accumulated by the testatrix herself; (b) that in 1966 she eliminated her husband as a coexecutor because he had improperly withdrawn $90,000 from her bank account for his own use; and (c) that she told her nurse, two days after she executed the last will on July 1, 1967, that she did not know what she had signed, but had signed some papers at her husband's insistence at a time when she was "very groggy". On this showing, various legatees under

the 1964 will (the last one before the 1967 will) moved to vacate the decree probating the 1967 will on the grounds of fraud, undue influence and lack of testamentary capacity; and they also filed objections to the accounting of the executors of the 1967 will. In their moving papers, they adequately explained their delay in seeking such relief by a showing that the existence and whereabouts of the earlier wills had been concealed from them. On this record, and without a plenary hearing on the issues raised by the petitioners, the learned Surrogate denied the motion to vacate the probate decree and dismissed the objections to the executors' accounting. In my opinion this was error. On this record the petitioners have made a showing of facts and circumstances that is clearly sufficient to raise an inference of fraud, undue influence, or lack of testamentary capacity — or, perhaps, a combination of them. On such prima facie showing, they are entitled to a plenary hearing of those issues and a full, adversary exploration of the circumstances under which the testatrix changed her long-standing dispositive scheme and executed the 1967 will which disinherited the petitioners.